USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-25-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHERYL DUKES,

                              Plaintiff,

          - against -

NEW YORK CITY EMPLOYEES' RETIREMENT
SYSTEM, ET AL.,

                              Defendants.

15 Civ. 3846 (JGK)

OPINION AND ORDER

**JOHN G. KOELTL, District Judge:**

The plaintiff, Cheryl Dukes, brings this action against the defendants, New York City Employees' Retirement System ("NYCERS") and its Board of Trustees, alleging violations stemming from her unsuccessful attempt to acquire accidental death benefits for her husband's death, which was allegedly caused by his work related to the aftermath of the September 11, 2001 terrorist attacks. The defendants move to dismiss the plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The defendants' motion to dismiss is **granted in part and denied in part.**

I.

In defending a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving the Court's

jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id.; Graubart v. Jazz Images, Inc., No. 02cv4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero), 600 F.3d 171, 175 (2d Cir. 2010); APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the Court is guided by the body of decisional law that has developed under Federal Rule of Civil Procedure 56. Kamen, 791 F.2d at 1011.

When presented with a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and a motion to dismiss on other grounds, the first issue is whether the Court has the subject matter jurisdiction necessary to consider the merits of

2

the action. See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the

3

complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## II.

### A.

The plaintiff's husband, Ralph Dukes, worked as a motor-vehicle operator for the New York City Health and Hospitals Corporation between 1985 and late 2002. Amended Compl. ¶¶ 16, 18. After the September 11, 2001 terrorist attacks, his work entailed traveling to the Manhattan Ground Zero site and transporting the remains of the deceased to the Medical Examiner's office for identification. Id. ¶ 18. The plaintiff alleges that, as a result of Mr. Dukes's work related to the September 11 attacks, he suffered conditions – including gastroesophageal reflux disease ("GERD"), chronic obstructive pulmonary disease ("COPD"), and asthma – leading to increased hospital visits. Id. ¶¶ 1, 21-24. Mr. Dukes died on September 20, 2007, and the plaintiff alleges that her husband's death was caused by these conditions. Id. at ¶¶ 1, 24.

Mr. Dukes was a member of NYCERS through his work for the New York City Health and Hospitals Corporation. Id. ¶ 31. In 2005, New York State enacted legislation that expanded benefits

4

to NYCERS members who participated in the rescue, recovery, or cleanup efforts after the September 11 attacks. Id. ¶ 26. Under that legislation, if a NYCERS member died ·

> from a qualifying World Trade Center condition . . . as determined by the applicable head of the retirement system or applicable medical board, then unless the contrary be proven by competent evidence, such retiree or vestee shall be deemed to have died as a natural and proximate result of an accident sustained in the performance of duty and not as a result of willful negligence on his or her part.

N.Y.C. Admin. Code § 13-168(c); Amended Compl. ¶ 26.[1]

In the summer of 2011, the plaintiff submitted an application to NYCERS for World Trade Center-related accidental death benefits for her husband's death. Amended Compl. ¶¶ 31-32. According to the plaintiff, Mr. Dukes's medical records show that he died from qualifying World Trade Center conditions – namely, GERD, COPD, and asthma. Id. ¶¶ 2, 27, 33. The NYCERS Medical Board, which first considered the plaintiff's application on March 27, 2012, found that Mr. Dukes suffered from COPD but found no evidence that his COPD was unstable at any time or that it contributed significantly to his death. Id. ¶¶ 33-34. The Medical Board concluded that Mr. Dukes's death was instead attributable to multiple complications secondary to his diabetes, which he had been diagnosed with before September 11,

---

[1] The defendants agreed that Mr. Dukes's classification as a Tier 4 employee does not affect the current motion.

2001. Id. ¶¶ 20, 34. By letter dated May 18, 2012, NYCERS sent the plaintiff a copy of the Medical Board's "recommendation of denial" of the accidental death benefits for which she applied and informed her that she could appeal the Medical Board's recommendation before the Special Trial Committee. Id. ¶ 36. The plaintiff submitted her appeal to the Special Trial Committee in a timely manner. Id.

On January 22, 2013, the Medical Board, not the Special Trial Committee, confirmed its conclusion recommending denial of the accidental death benefits because Mr. Dukes's death was allegedly not related to a qualifying World Trade Center condition. Id. ¶ 37. NYCERS sent the plaintiff a letter dated July 1, 2013, stating that the Medical Board had denied her application. Id. ¶ 38. According to the plaintiff, this letter did not indicate that the Special Trial Committee or the NYCERS Board of Trustees had ever considered her husband's case – it mentioned only that "[b]ased on the Medical Board['s] determination[,] there will be no further review of this case." Id.

**B.**

Proceeding pro se, the plaintiff filed suit in the United States District Court for the Eastern District of New York, challenging NYCERS' denial of accidental death benefits for her husband's death under Article 78 of the New York Civil Practice

6

Laws and Rules ("CPLR Article 78"). Dukes ex rel. Dukes v.
NYCERS, No. 13cv5303 (E.D.N.Y. 2013). After conducting a motion
hearing, the court dismissed the plaintiff's complaint for lack
of subject matter jurisdiction in a February 12, 2014 opinion.
Dukes ex rel. Dukes v. NYCERS, No. 13cv5303, 2014 WL 583235
(E.D.N.Y. Feb. 12, 2014). The court concluded that there was no
diversity jurisdiction because the plaintiff's domicile was in
New York, not Pennsylvania as she claimed. The court noted the
plaintiff's testimony that "she lives in her Staten Island home
with her infirm mother who needs full time care" and that "[s]he
expressed the intent to remain in Staten Island indefinitely to
continue caring for her mother and working in New York City."
Id. at *2. The court also noted that, shortly before bringing
suit, the plaintiff applied for a permit to run a daycare
business out of her Staten Island apartment. Id. The Second
Circuit Court of Appeals summarily affirmed the district court's
decision. Dukes ex rel. Dukes v. N.Y.C. Emps.' Ret. Sys., & Bd.
of Trustees, 581 F. App'x 81, 82 (2d Cir. 2014). The plaintiff
petitioned the Supreme Court for a writ of certiorari and her
petition was denied. Dukes v. N.Y.C. Emps.' Ret. Sys. & Bd. of
Trustees, 135 S. Ct. 2063 (2015).

Following the denial of her petition for a writ of
certiorari, the plaintiff filed suit in this District, again
proceeding pro se and challenging NYCERS' denial of accidental

7

death benefits for her husband's death. Dukes for Dukes v. NYCERS, No. 15cv3846, (S.D.N.Y. 2015). The case was initially assigned to another judge in this District, who sua sponte dismissed the plaintiff's complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief can be granted and under Federal Rule of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction. Dukes for Dukes v. NYCERS, No. 15cv3846, 2016 WL 10703152, at *3 (S.D.N.Y. Mar. 30, 2016). However, the Second Circuit Court of Appeals vacated that decision in a summary order, explaining that the district court failed to determine the plaintiff's domicile for purposes of diversity of citizenship jurisdiction at the time she filed suit in this District. Dukes for Dukes v. NYCERS, 697 F. App'x 100, 100-01 (2d Cir. 2017). The Court of Appeals also noted that the plaintiff invoked the Air Transportation Safety and System Stabilization Act, which "was neither passed on below nor raised in the Eastern District case" but might provide the district court with federal question jurisdiction. Id. at 101.

The plaintiff's case was remanded to this District and reassigned to this Court. After her case was remanded, this Court authorized pro bono counsel for the plaintiff on the issue of jurisdiction. Pro bono counsel has filed an amended complaint for the plaintiff and has generously agreed to represent the plaintiff for all purposes in this litigation.

The plaintiff brings four claims related to NYCERS' denial of accidental death benefits for her husband's death. First, she challenges NYCERS' determination under CPLR Article 78, alleging that NYCERS failed to consider properly her application and rendered a decision not supported by substantial evidence. Second, the plaintiff claims that by not paying her the benefits to which she is entitled, NYCERS has committed a breach of the contract described in Article V, § 7(a) of the New York State Constitution. Third, under 42 U.S.C. § 1983, the plaintiff alleges that NYCERS' handling of her application violated her right to procedural due process. Fourth, also under § 1983, the plaintiff claims that NYCERS' handling of her application constituted a substantive due process violation. The plaintiff contends that subject matter jurisdiction exists over all of these claims because she is domiciled in Pennsylvania, the defendants do not contest that they are citizens of New York, and the amount in controversy exceeds $75,000.

The defendants assert that the plaintiff is domiciled in New York, not Pennsylvania, and thus subject matter jurisdiction over this action is lacking. The defendants also contend that federal courts cannot exercise jurisdiction over claims brought under CPLR Article 78. Finally, the defendants argue that there was no violation of Article V, § 7 of the New York State

Constitution, and that both of the plaintiff's due process claims fail as a matter of law.

### III.

### A.

The defendants first contend that the Court lacks subject matter jurisdiction over this action based on diversity of citizenship, 28 U.S.C. § 1332, because the plaintiff and the defendants are not diverse parties.[2] The defendants contend that the plaintiff as well as the defendants are citizens of New York State.

An individual's citizenship for purposes of diversity is based upon that individual's domicile. Gutierrez v. Fox, 966 F. Supp. 214, 217 (S.D.N.Y. 1997). "Domicile requires two elements: the party's physical presence in the state and the intent to remain in the state indefinitely." Id. A party might have more than one residence but can only have one domicile at any one time. Id. Where a party has more than one residence, courts should focus on where the party intends to remain. Chappelle v.

---

[2] In a footnote in their moving brief, the defendants summarily state that the plaintiff's complaint should also be dismissed because her filing of a new action in this District, as opposed to the Eastern District of New York, constitutes an attempt to cure diversity and forum shopping. Defs.' Mem. at 8 n.3. The defendants provide no additional facts or argument supporting this point. It is unclear why filing suit in the Southern District of New York, rather than in the Eastern District, would affect diversity. Moreover, given that both courts are in the same state and circuit, the plaintiff can hardly be accused of forum shopping. See Campbell v. Ganter, 353 F. Supp. 2d 332, 338 (E.D.N.Y. 2004).

Beacon Commc'ns Corp., 863 F. Supp. 179, 181 (S.D.N.Y. 1994).
This can be ascertained by considering, among other factors,
"the place where civil and political rights are exercised, taxes
paid, real and personal property (such as furniture and
automobiles) located, driver's and other licenses obtained, bank
accounts maintained, location of club and church membership and
places of business or employment." Id. (quotation marks
omitted).

In this case, the facts show clearly that the plaintiff's
domicile is, and was at the time this lawsuit was brought, in
Pennsylvania.[3] The amended complaint alleges that since 2007 the

---

[3] Although a plaintiff must typically prove subject matter jurisdiction
by a preponderance of the evidence, the defendants contend that the clear-
and-convincing evidentiary standard applies in this case because the
plaintiff is alleging a change in her domicile from New York to Pennsylvania.
See Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000) ("A
party alleging that there has been a change of domicile has the burden of
proving the . . . [relevant] facts by clear and convincing evidence."
(quotation marks omitted)). However, this standard appears to apply in
instances where a party claims to be domiciled in one state and then later
claims to be domiciled in another. See, e.g., Ceglia v. Zuckerberg, 772 F.
Supp. 2d 453, 455-57 (W.D.N.Y. 2011); Kissel v. DiMartino, No. 92cv5660, 1993
WL 289430, at *3 (E.D.N.Y. July 20, 1993); Gold v. Katz, No. 90cv7726, 1991
WL 237807, at *1-3 (S.D.N.Y. Nov. 4, 1991). In this case, the plaintiff did
not contend earlier that she was domiciled in New York. Rather, in her action
filed in the Eastern District of New York, which was ultimately dismissed for
lack of diversity, the plaintiff argued that she was domiciled in
Pennsylvania; it was the court that concluded otherwise. Dukes, 2014 WL
583235 at *2. Moreover, in vacating and remanding the plaintiff's action back
to this Court, the Second Circuit Court of Appeals stated that the
plaintiff's domicile should be determined as of the time she filed suit in
this District, implying that the conclusion reached by the court in the
Eastern District of New York should not affect this Court's determination.
See Dukes, 697 F. App'x at 101. In any event, the facts alleged in this case
demonstrate by clear and convincing evidence that the plaintiff's domicile
is, and was at the time this lawsuit was brought, in Pennsylvania.

At oral argument, the defendants requested jurisdictional discovery –
namely, to depose the plaintiff – and an evidentiary hearing on issues
related to diversity jurisdiction. Both requests are **denied.** The defendants
did not make these requests in their papers, and in fact the defendants

plaintiff has owned her home and primary residence in Long Pond, Pennsylvania. Amended Compl. ¶ 44. She has been registered to vote in Pennsylvania since 2008, and Internal Revenue Service records predating her filing of this action list her Pennsylvania residence. Id. ¶¶ 45, 47. Moreover, at the time this action was filed, the plaintiff held a Pennsylvania driver's license and her Pennsylvania address was listed on her bank statements. Id. ¶ 48; Dkt. No. 36-8.

The defendants point out that at the time this action was filed, the plaintiff resided part-time in Staten Island, New York, and worked in Vestal, New York. The defendants also note that some of the plaintiff's documents are linked to her Staten Island address and show transactions taking place in New York. However, as the court noted in the plaintiff's action filed in the Eastern District of New York, the plaintiff resided in Staten Island to care for her infirm mother. Dukes, 2014 WL 583235 at *2; Amended Compl. ¶ 49. Her mother passed away before the plaintiff filed suit in this District, Amended Compl. ¶ 40, eliminating the reason for the plaintiff to reside part-time in Staten Island. Moreover, the plaintiff's place of work in

---

confirmed that they did not want jurisdictional discovery at an earlier hearing. Dkt. No. 47-1 at 4. Moreover, it is clear from the plaintiff's amended complaint that there is diversity jurisdiction in this case. Finally, it would be unnecessarily burdensome to depose the plaintiff twice, and the defendants will have ample opportunity to depose the plaintiff as this case proceeds. This case has been delayed long enough, no doubt due in part to the plaintiff's previous lack of representation.

Vestal, New York, is about a ninety-minute drive from her Pennsylvania residence, as opposed to a roughly three-hour drive from Staten Island. Amended Compl. ¶ 46; see Opp'n at 11.

In short, the plaintiff's domicile is in Pennsylvania. Because the defendants are citizens of New York and the plaintiff alleges in good faith that the amount in controversy exceeds $75,000, this Court has diversity jurisdiction over this action.[4]

### B.

The defendants contend that, despite diversity jurisdiction, there is no subject matter jurisdiction over the plaintiff's CPLR Article 78 claim because federal courts cannot entertain such claims. The defendants add that if this Court concludes otherwise, it should nonetheless refuse to exercise supplemental jurisdiction over the claim.

The defendants' contention that federal courts cannot entertain CPLR Article 78 claims has no merit. See, e.g., Casale

---

[4] At oral argument, the defendants raised the argument for the first time that the plaintiff failed to allege adequately that the amount in controversy exceeds $75,000. This is not true. The Amended Complaint alleges that the "matter in controversy exceeds the sum of $75,000, exclusive of interest and costs." Amended Compl. ¶ 9. "Once the party invoking jurisdiction alleges an amount exceeding the jurisdictional threshold, there exists a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy. The party opposing jurisdiction can overcome this presumption by demonstrating to a legal certainty that the plaintiff cannot recover the jurisdictional amount." Tatum v. Oberg, 650 F. Supp. 2d 185, 190 (D. Conn. 2009) (quotation marks and citations omitted). The defendants have offered no evidence to rebut the plaintiff's allegation and indeed did not even raise the contention before argument on the motion.

v. Metro. Transp. Auth., No. 05cv4232, 2005 WL 3466405, at *5-7 (S.D.N.Y. Dec. 19, 2005) (rejecting the argument that federal courts cannot hear CPLR Article 78 claims); see also Carver v. Nassau Cty. Interim Fin. Auth., 730 F.3d 150, 155 (2d Cir. 2013) ("We need not decide . . . whether Article 78 can, on its own, deprive a federal court of jurisdiction over claims brought under that provision, as some district court cases have held. [Supreme Court precedent] . . . would suggest otherwise, as long as those claims would otherwise fall within the court's pendent jurisdiction." (internal citations omitted)).[5]

When the Court has diversity of citizenship jurisdiction, as it does in this case, then the Court has subject matter jurisdiction to hear state law claims such as CPLR Article 78 claims. See Cruz v. T.D. Bank, N.A., No. 10cv8026, 2014 WL 1569491, at *3 (S.D.N.Y. Apr. 17, 2014) (collecting cases where federal courts heard CPLR Article 78 claims when exercising diversity jurisdiction); Elite Med. Supply of N.Y., LLC v. State Farm Mut. Ins. Co., No. 13cv918, 2014 WL 823439, at *5 (W.D.N.Y. Mar. 3, 2014) (rejecting the argument that "federal courts lack

---

[5] The court in Casale also noted that

[CPLR Article 78] may direct that "a proceeding under this article shall be brought in state supreme court," but this requirement has nothing to do with whether the proceeding falls within a federal jurisdictional statute. If such a directive could deprive federal courts of jurisdiction, state legislatures, not Congress, would control the power of the federal judiciary.

2005 WL 3466405 at *6 (citation and alterations omitted).

subject matter jurisdiction over an Article 78 special

proceeding, even when the dispute is otherwise within the

Court's diversity jurisdiction"); Rosenthal v. N.Y. Univ., No.

08cv5338, 2009 WL 10696888, at *2 (S.D.N.Y. July 21, 2009)

(holding that "a federal district court having diversity

jurisdiction may" – and in some situations must – "consider a

claim for relief grounded in the substance of CPLR Article 78"

(internal citation omitted)). The bulk of the cases that the

defendants cite to support their contention that this Court

cannot entertain the plaintiff's CPLR Article 78 claim do not

involve diversity jurisdiction but rather consider the separate

question of whether a federal court that has federal

jurisdiction to hear a federal claim should exercise

supplemental jurisdiction to consider a CPLR Article 78 state

claim.[6] See, e.g., De Jesus v. City of New York, No. 10cv9400,

2012 WL 569176, at *5 (S.D.N.Y. Feb. 21, 2012) (declining to

exercise supplemental jurisdiction over the plaintiff's CPLR

Article 78 claims); see also McNamara v. Kaye, 360 F. App'x 177

(2d Cir. 2009) (affirming the dismissal of a CPLR Article 78

claim in a case not involving diversity jurisdiction).

---

[6] In the defendants' reply brief they cite Routh v. University of Rochester, 981 F. Supp. 2d 184, 210 (W.D.N.Y. 2013), which the defendants characterize as a diversity case in which the court declined to exercise jurisdiction over a CPLR Article 78 claim. Reply at 2. However, the court in that case expressly stated that it treated the plaintiff's jurisdictional argument concerning the CPLR Article 78 claim as based on supplemental jurisdiction, not diversity jurisdiction. Id. at 204-05.

There is diversity jurisdiction over the plaintiff's CPLR Article 78 claim in this case and no authority prevents federal courts from exercising jurisdiction over such claims.[7] Accordingly, the defendants' motion to dismiss the plaintiff's CPLR Article 78 claim is **denied**.[8]

## IV.

The defendants next contend that the plaintiff's second claim should be dismissed. That claim argues that NYCERS breached the contract described in Article V, § 7(a) of the New York State Constitution by not providing the plaintiff with accidental death benefits to which she is entitled. The

---

[7] Because there is diversity jurisdiction and this Court must exercise jurisdiction over the plaintiff's CPLR Article 78 claim, there is no need to consider whether there is federal question jurisdiction under the Air Transportation Safety and System Stabilization Act. See Dukes, 697 F. App'x at 101 (noting that the plaintiff invoked this Act in bringing suit).

[8] At oral argument, the defendants contended that the plaintiff's CPLR Article 78 claim was time-barred. However, this argument was not meaningfully raised in the defendants' papers. Moreover, a statute of limitations defense is an affirmative defense that can only be decided on a motion to dismiss "where (1) the complaint facially shows noncompliance with the limitations period, and (2) the affirmative defense clearly appears on the face of the pleadings." Essex Capital Corp. v. Garipalli, No. 17cv6347, 2018 WL 6618388, at *2 (S.D.N.Y. Dec. 18, 2018). That defense could not be decided when it was not briefed or argued in the papers.

Additionally, in their reply brief, the defendants argue for the first time that the plaintiff's CPLR Article 78 claim should be dismissed because the plaintiff cannot provide the amount of credible evidence necessary to support her claim. However, the plaintiff's complaint includes several allegations relating to why the NYCERS Medical Board arrived at an incorrect conclusion. See, e.g., Amended Compl. ¶¶ 21-24, 33-34. The defendants do not explain why, on a motion to dismiss, these allegations are insufficient to state a claim. Moreover, "[i]t is well established . . . that a court should not 'consider arguments that are raised for the first time in a reply brief.'" Mateo v. Bristow, No. 12cv5052, 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 n.5 (2d Cir. 2006)).

defendants argue that the plaintiff has no contractual right until the NYCERS Medical Board decides that she is entitled to such benefits. That is, the plaintiff's contractual right is arguably inchoate and unenforceable because the Medical Board determined that her husband's death did not entitle her to accidental death benefits.

Article V, § 7 of the New York State Constitution provides that "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired." The purpose of the provision is "to confer contractual protection upon the benefits of pension and retirement systems of the State and of the civil divisions thereof, and to prohibit their diminution or impairment prior to retirement." Birnbaum v. N.Y. State Teachers' Ret. Sys., 152 N.E.2d 241, 245 (N.Y. 1958) (emphasis removed). Under the provision, the rights of an employee are therefore fixed at the time the employee becomes a member of a retirement system. Id. Hence, the terms of an Article V, § 7 contract are provided by the law and conditions in effect at the time the employee becomes a member of the system. See Civil Serv. Emps. Ass'n Inc., Local 1000 v. Regan, 525 N.E.2d 1, 3 (N.Y. 1988). "A plaintiff may maintain a breach of contract cause of action

apart from an [A]rticle 78 claim." King v. N.Y.C. Emps. Ret. Sys., 212 F. Supp. 3d 371, 403 (E.D.N.Y. 2016).

Given this framework, the defendants' position that the plaintiff's right to accidental death benefits is unenforceable until the NYCERS Medical Board determines that her husband died from a World Trade Center-related cause cannot be correct. Through her husband, the plaintiff's contractual right to accidental death benefits for her husband's death vested when her husband became a member of NYCERS. The requirement that the NYCERS Medical Board must find that Mr. Dukes died of a qualifying cause is a condition precedent to the plaintiff's ability to collect under the contract; it is not, as the defendants suggest, a condition that triggers the vesting of the plaintiff's contractual rights. Those rights vested when Mr. Dukes became a member of NYCERS through his employment with the New York City Health and Hospitals Corporation. See Birnbaum, 152 N.E.2d at 245. Moreover, the defendants' position that contractual rights are unenforceable until after a member meets a series of postretirement requirements is at odds with Article V, § 7's purpose, which is to provide a member with contractual protection upon joining a retirement system to prevent the member's benefits from being impaired before the member's retirement. See Birnbaum, 152 N.E.2d at 245.

18

In this case, the plaintiff has alleged the elements necessary to state a claim for breach of contract under New York Law: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). The plaintiff has alleged that (1) she is the beneficiary of a contract between NYCERS and Mr. Dukes formed under Article V, § 7 of the New York State Constitution; (2) Mr. Dukes performed in full under the contract, namely that he passed away due to a qualifying condition; (3) the defendants breached the contract by refusing to provide her with benefits owed under the contract; and (4) she has suffered damages. The defendants' motion to dismiss the plaintiff's breach of contract claim is therefore **denied.**

## V.

The defendants also move to dismiss the plaintiff's claims pursuant to 42 U.S.C. § 1983 that allege procedural and substantive due process violations. A plaintiff may bring a cause of action for procedural and substantive violations of rights protected by the due process clause of the United States Constitution pursuant to 42 U.S.C. § 1983. See King, 212 F. Supp. 3d at 397. Asserting a successful § 1983 claim requires the plaintiff to show that the defendants acted under color of state law and that the defendants' actions resulted in a

19

deprivation of the plaintiff's constitutional rights. Id. The defendants do not contest that their relevant actions were under color of state law. Accordingly, the remaining question is whether the plaintiff alleged adequately that the defendants' actions violated her due process rights.

## A.

The defendants argue that the plaintiff's procedural due process claim must be dismissed because (1) it is not clear from the amended complaint that the plaintiff is challenging NYCERS' process of determining whether she qualified for the accidental death benefits as an established state procedure; (2) if viewed as challenging an established state procedure, the plaintiff's amended complaint fails to state a claim that NYCERS' procedure does not afford constitutionally adequate process; and (3) in any event, a CPLR Article 78 proceeding provides adequate due process.

"No procedural due process claim exists if the lack of due process prior to the termination of the protectable interest at issue occurred based on random, unauthorized acts by state employees. A claim does, however, stand where the deprivation at issue occurred based on established state procedures." Id. at 400 (citation and quotation marks omitted). When a plaintiff challenges an established state procedure that takes place before the deprivation of an interest, the availability of a

postdeprivation procedure – like a CPLR Article 78 proceeding – does not satisfy due process; the predeprivation process itself must be adequate. Id. at 400, 403 ("The availability of an [A]rticle 78 proceeding did not absolve NYCERS from providing [the plaintiff] with an adequate predeprivation of benefits hearing."). On the other hand, the availability of a CPLR Article 78 proceeding generally provides an adequate postdeprivation remedy to cure inadequate predeprivation process based on random and unauthorized acts by state employees. See Pierre v. N.Y.C. Taxi & Limousine Comm'n, No. 17cv973, 2017 WL 1417257, at *3 (E.D.N.Y. Apr. 19, 2017) (collecting cases).

Here, the plaintiff alleges that the process she received was deficient in the following ways:

- NYCERS took about two years to reach a decision on her application for benefits;
- the NYCERS Medical Board ignored relevant conditions in Mr. Dukes's medical records;
- only the NYCERS Medical Board, not the NYCERS Board of Trustees, considered the plaintiff's application, despite the Board of Trustees being the only body authorized to grant benefits;
- the NYCERS "Special Trial Committee" did not consider the plaintiff's appeal although NYCERS offered her – and she requested – such review;
- the NYCERS General Counsel misrepresented the recommendations of the NYCERS Medical Board by sending the plaintiff a letter stating that the Medical Board denied the plaintiff's application, although the Medical Board only recommended denial; and
- "[u]pon information and belief, NYCERS' denial rates and time to process claims are both dramatically worse than other agencies that grant 9/11-related benefits."

Amended Compl. ¶ 72. All but the first and last of these alleged deficiencies are allegations of random and unauthorized acts by City officials, not challenges to established state procedures.

**1.**

The plaintiff's claim that the NYCERS Medical Board ignored relevant conditions is not a challenge to the procedures NYCERS has set up to address World Trade Center-related accidental death benefits. Rather, it is an allegation that the Medical Board did not properly carry out its duty. This is not a challenge to an established state procedure. Cf. Marino v. Ameruso, 837 F.2d 45, 47 (2d Cir. 1988) (holding that if an administrative law judge were to make an evidentiary error of a constitutional magnitude, the error would be categorized as a random and unauthorized act by a state actor). The same is true of the plaintiff's allegation that the NYCERS General Counsel misrepresented the recommendations of the NYCERS Medical Board.

Moreover, the plaintiff's allegations that the NYCERS Board of Trustees did not consider her application and that she did not receive a hearing in front of the Special Trial Committee – both of which she claims she was entitled to – are not challenges to NYCERS' established procedures but are rather claimed instances of the failure to follow established procedures. These allegations therefore raise deficiencies in

22

process that must be characterized as random and unauthorized acts by the NYCERS officials. See Snype v. New York City, No. 04cv8268, 2006 WL 345861, at *4 (S.D.N.Y. Feb. 15, 2006) (holding that the plaintiff's allegation that City officials did not follow established City procedures constitutes a claim concerning random and unauthorized acts); Pleickhardt v. Janoski, No. 83cv2314, 1989 WL 47705, at *4 (E.D.N.Y. Apr. 28, 1989) (stating that "a failure by state actors to follow the proper procedures" constitutes a random and unauthorized act).

Thus, four of the plaintiff's six allegations supporting her procedural due process claim are based on alleged random and unauthorized acts by City officials. These alleged deficiencies could have been meaningfully addressed in a CPLR Article 78 proceeding. See Campo v. N.Y.C. Emps. Retirement Sys., 843 F.2d 96, 102-03 (2d Cir. 1988) (holding that the availability of a CPLR Article 78 proceeding provides constitutional due process to a municipal employee challenging a random procedural error in denial of retirement benefits); Hayden v. Hevesi, No. 05cv294, 2011 WL 4962262, at *7 (W.D.N.Y. Oct. 18, 2011) ("Plaintiff's due process claims [involving the denial of disability retirement benefits] fall under the category of 'random and unauthorized' due process deprivations, which can be remedied by an Article 78 proceeding."). Therefore, the alleged deficiencies

do not aid the plaintiff in stating a procedural due process
claim.

**2.**

The plaintiff also summarily alleges that, "[u]pon
information and belief, NYCERS' denial rates and time to process
claims are both dramatically worse than other agencies that
grant 9/11-related benefits." Amended Compl. ¶ 72. Although
these threadbare allegations are aimed at NYCERS' established
procedures, not random and unauthorized acts, without more they
cannot support a procedural due process claim. Moreover, the
defendants claim that the plaintiff's allegations of high denial
rates and long processing times are based on statistics for
World Trade Center-related disability benefits, not death
benefits. The plaintiff does not respond to this argument. The
plaintiff also does not provide the figures of the alleged high
denial rates and long processing times[9] or the same figures for
other comparable benefit systems as a means of comparison. As
pleaded, the plaintiff's claim that NYCERS' established
procedures lead to unacceptably high denial rates and lengthy

---

[9] As to denial rates, the plaintiff states only that "NYCERS has denied
more than half of the applications it has received for World Trade Center-
related benefits." Amended Compl. ¶ 4. With respect to processing times, the
plaintiff states that it takes "an average of six to nine months" for an
application to be heard by NYCERS. Id. ¶ 29.

processing times is insufficient to state a procedural due
process claim.

**3.**

The final allegation left in support of the plaintiff's
procedural due process claim is that it took NYCERS two years to
fully process the plaintiff's application for accidental death
benefits. The plaintiff argues that the two-year delay in
processing constitutes a procedural due process violation in and
of itself.

"[D]elay in processing can become so unreasonable as to
deny due process." Kraebel v. N.Y.C. Dep't of Hous. Pres. &
Dev., 959 F.2d 395, 405 (2d Cir. 1992). However, "a delay
amounts to a due process violation only where it renders the
prescribed procedures meaningless in relation to the private
interest at stake. [T]he mere assertion that state remedies are
lengthy . . . will not render state remedies inadequate [under
the Due Process Clause] unless they are inadequate to the point
that [they are] meaningless or nonexistent." Kuck v. Danaher,
600 F.3d 159, 163 (2d Cir. 2010) (quotation marks omitted,
alterations in original).

Whether a delay amounts to a procedural due process
violation is a matter of context, driven by the three factors

articulated in Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Kuck, 600 F.3d at 163. The Mathews factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As to the first Mathews factor, although the accidental death benefits at issue are undoubtedly important to the plaintiff, she does not allege that they implicate "the very means by which to live."[10] See Campo v. N.Y.C. Emps.' Ret. Sys., 653 F. Supp. 895, 899 (S.D.N.Y. 1987) (quotation marks omitted), aff'd, 843 F.2d 96 (2d Cir. 1988).

Second, a two-year delay in processing an application – and for that matter, the alleged six to nine months it takes for an average NYCERS application to be heard, Amended Compl. ¶ 29 – is not so great as to automatically constitute a due process

---

[10] In their reply brief, the defendants claim that the plaintiff had no property interest in the accidental death benefits allegedly owed to her and therefore was not entitled to predeprivation process. However, the defendants' moving brief expressly stated that they "assume for purposes of this motion that plaintiff has some kind of property interest [in the benefits] – for purposes of the procedural due process claim only." Defs.' Mem at 14 n.8. Moreover, the Court will not consider an argument made for the first time in a reply brief. And in any event, for the reasons discussed in Part IV, supra, the plaintiff has a property interest in the benefits that she alleges are owed to her.

violation. See Liberty Cable Co. v. City of New York, 60 F.3d 961, 964 (2d Cir. 1995) (collecting cases in which delays of up to two years in processing benefits claims were held to be constitutional); Isaacs v. Bowen, 865 F.2d 468, 477 (2d Cir. 1989) (same, and noting that a nineteen-month delay from claim initiation to completion of review is not remarkable in employment benefits systems). And the two years of processing in the plaintiff's case included review by the NYCERS Medical Board, an appeal, further review by Medical Board, and then a denial letter issued by NYCERS. The plaintiff fails to allege sufficient facts showing why, in her case, two years is an unacceptably long processing time. The second Mathews factor therefore weighs dispositively in favor of the defendants.

The final Mathews factor, the importance of the government interest at stake and the cost of additional safeguards, is somewhat neutral. NYCERS has a strong interest in taking its time to ensure it does not pay out accidental death benefits to those whose deaths are not attributable to World Trade Center-related activities. On the other hand, the defendants provide no

convincing explanation for why the plaintiff's application took
two years to process.[11]

Overall, in relation to the plaintiff's alleged two-year
delay, the Mathews factors favor the defendants and the
plaintiff has failed to plead that NYCERS' procedures caused
such a delay that they were "meaningless in relation to the
private interest at stake." See Kuck, 600 F.3d at 163. Thus, as
pleaded, the plaintiff's claim that it took NYCERS two years to
process her application is not sufficient to state a procedural
due process claim.

*      *      *

In sum, the four allegations assessed in Part V.A.1.,
supra, relate to random and unauthorized actions by City
officials. Those four allegations therefore do not support the
plaintiff's procedural due process claim and there is a
procedural mechanism to consider those claims, namely a CPLR
Article 78 proceeding. Indeed, the plaintiff brings a CPLR

---

[11] The defendants argue that the delay in processing the plaintiff's
application "was caused by the delay of Mr. Dukes's employer to verify his
[World Trade Center] participation." Defs.' Mem. at 12; Reply at 6. But the
evidence cited by the defendants indicates that Mr. Dukes's World Trade
Center participation was confirmed by his employer on August 15, 2011, and
that the confirmation was received by NYCERS four days later. Horowitz Decl.
Ex. D6 at 2. The plaintiff's application was not denied until July 1, 2013.
Thus, from the time that Mr. Dukes's participation was confirmed by his
employer, it took nearly two years for the plaintiff's application to be
processed.

Article 78 claim in this Court to address the denial of benefits that these claimed procedural deficiencies allegedly caused.[12]

Moreover, as pleaded, the plaintiff's remaining allegations – NYCERS' unduly high denial rates and long processing times, and the two-year processing time in the plaintiff's case – are insufficient to support the plaintiff's procedural due process claim. However, those allegations may support a procedural due process claim if pleaded less summarily. Accordingly, the defendants' motion to dismiss is **granted** with respect to the plaintiff's procedural due process claim but that claim is **dismissed without prejudice.**

### B.

The plaintiff brings a substantive due process cause of action based on the same allegations supporting her procedural due process claim. The defendants contend that the plaintiff's substantive due process claim fails because "it is questionable whether" the plaintiff has a property right in her husband's accidental death benefits and because NYCERS' alleged misconduct does not meet the high bar required to assert a substantive due process claim.

---

[12] Moreover, at oral argument, the defendants confirmed that the plaintiff's claims that she was not afforded proper NYCERS procedure and that the Medical Board's decision was arbitrary and capricious are claims that can be brought through CPLR Article 78.

"To allege a violation of substantive due process, plaintiff must claim: (1) a valid property interest or fundamental right; and (2) that the defendant infringed on that right by conduct that shocks the conscience or suggests a gross abuse of governmental authority." King, 212 F. Supp. 3d at 401. Substantive due process does not protect "against government action that is 'incorrect or ill-advised.'" Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (quoting Bishop v. Wood, 426 U.S. 341, 350 (1976)). Indeed, "[s]ubstantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999).

Accidental death benefits appear to be a legitimate property interest for purposes of substantive due process claims. See King, 212 F. Supp. 3d at 401. However, NYCERS' alleged misconduct does not shock the conscience or suggest a gross abuse of governmental authority. See Lowrance, 20 F.3d at 537. At best, the plaintiff's allegations suggest that NYCERS' actions were at times incorrect or ill-advised and that NYCERS'

mechanics for processing applications run slower than they should.

Moreover, the circumstances in this case distinguish it from those which the plaintiff cites for support. The plaintiff states no facts indicating that the defendants "needlessly and maliciously prolonged" her application process, see Biswas v. City of New York, 973 F. Supp. 2d 504, 538 (S.D.N.Y. 2013); or that the defendants engaged in "a pattern of abuse and harassing behavior," see Media All., Inc. v. Mirch, No. 09cv0659, 2011 WL 3328532, at *11 (N.D.N.Y. Aug. 2, 2011); or that the defendants had a plan to "undertake a series of flawed legal actions" to deprive the plaintiff of her husband's accidental death benefits, see DiLuzio v. Vill. of Yorkville, Ohio, No. 11cv1102, 2014 WL 11516131, at *13 (S.D. Ohio Sept. 4, 2014), aff'd, 796 F.3d 604 (6th Cir. 2015). Accordingly, the defendants' motion to dismiss is **granted** with respect to the plaintiff's substantive due process cause of action. That claim is **dismissed with prejudice.**

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the Court has subject matter jurisdiction over this action and the defendants' motion to dismiss the plaintiff's

31

complaint is **granted in part and denied in part**. With respect to the plaintiff's procedural and substantive due process claims, the defendants' motion to dismiss is **granted**. The plaintiff's procedural due process claim is **dismissed without prejudice** and her substantive due process claim is **dismissed with prejudice**. With respect to each of the plaintiff's other claims, the defendants' motion to dismiss is **denied**. Finally, the defendants' requests for jurisdictional discovery and an evidentiary hearing, which they made for the first time at oral argument of this motion, are **denied**. The defendants are free, however, to pursue all appropriate discovery in the course of this case.

The parties are directed to confer and to submit a report pursuant to Federal Rule of Civil Procedure 26(f) by **March 8, 2019.**

The Clerk is directed to close Docket Number 42.

**SO ORDERED.**

**Dated:    New York, New York**
         **February 25, 2019**

_____
       **John G. Koeltl**
  **United States District Judge**