UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/24/2019
```

Dukes,

                              Plaintiff,

              -against-

NYCERS et al.,

                              Defendants.

1:15-cv-03846 (JGK) (SDA)

<u>OPINION AND ORDER</u>

**STEWART D. AARON, United States Magistrate Judge:**

Defendant New York City Employees' Retirement System ("NYCERS")[1] and three doctors retained by NYCERS' Medical Board, *i.e.*, Joseph Bottner ("Bottner"), Vasilios Sierros ("Sierros") and Theobald Reich ("Reich") (collectively, the "Movants"), move to quash subpoenas served upon Bottner, Sierros and Reich[2] and for a protective order regarding Bottner's handwritten notes that are contained in the NYCERS Administrative Record, based upon the deliberative process privilege. (*See* Letter Motion, ECF No. 67, at 1, 3.)

For the following reasons, the Court DENIES the motion in its entirety. There is no deliberative process privilege that applies to this case, and Movants have not met their burden to establish that the subpoenas should be quashed or that a protective order should be entered.

---

[1] New York City Employees' Retirement System, or NYCERS, "is a City administrative agency that manages retirement and disability benefits for City employees." *Morris v. New York City Employees' Ret. Sys.*, 129 F. Supp. 2d 599, 601 (S.D.N.Y. 2001).

[2] Bottner, Sierros and Reich collectively are referred to herein as the "Subpoenaed Doctors."

**BACKGROUND**

This is an action by plaintiff, Cheryl Dukes ("Plaintiff"), against NYCERS and its Board of Trustees alleging violations stemming from her unsuccessful attempt to acquire accidental death benefits for the death of her husband, Ralph Dukes (the "Decedent"), whose death allegedly was caused by his work related to the aftermath of the September 11, 2001 terrorist attacks. *See Dukes v. New York City Employees' Ret. Sys.*, 361 F. Supp. 3d 358, 363 (S.D.N.Y. 2019). The Amended Complaint alleges a claim under Article 78 of the New York Civil Practice Law and Rules ("CPLR") for a wrongful administrative act ("Article 78 Claim"); claims under 42 U.S.C. § 1983 for deprivation of procedural and substantive due process; and a claim under the New York common law for breach of contract. (Am. Compl., ECF No. 39, ¶¶ 50-83.)

The facts relevant to the pending motion are set forth in the Opinion and Order by District Judge Koeltl deciding Defendants' motion to dismiss the Amended Complaint:

> In the summer of 2011, the plaintiff submitted an application to NYCERS for World Trade Center-related accidental death benefits for her husband's death. Amended Compl. ¶¶ 31-32. According to the plaintiff, Mr. Dukes's medical records show that he died from qualifying World Trade Center conditions – namely, GERD,[3] COPD,[4] and asthma. *Id*. ¶¶ 2, 27, 33. The NYCERS Medical Board, which first considered the plaintiff's application on March 27, 2012, found that Mr. Dukes suffered from COPD but found no evidence that his COPD was unstable at any time or that it contributed significantly to his death. *Id*. ¶¶ 33-34. The Medical Board concluded that Mr. Dukes's death was instead attributable to multiple complications secondary to his diabetes, which he had been diagnosed with before September 11, 2001. *Id*. ¶¶ 20, 34.
>
> By letter dated May 18, 2012, NYCERS sent the plaintiff a copy of the Medical Board's "recommendation of denial" of the accidental death benefits for which she applied and informed her that she could appeal the Medical Board's

---

[3] "GERD" refers to gastroesophageal reflux disease, which is a disease associated with the stomach and esophagus. *Dorland's Illustrated Medical Dictionary* 764, 772 (32nd ed. 2012) (hereinafter, "*Dorland's*").

[4] "COPD" refers to chronic obstructive pulmonary disease. *Dorland's* at 412.

recommendation before the Special Trial Committee. *Id*. ¶ 36. The plaintiff submitted her appeal to the Special Trial Committee in a timely manner. *Id*.

On January 22, 2013, the Medical Board, not the Special Trial Committee, confirmed its conclusion recommending denial of the accidental death benefits because Mr. Dukes's death was allegedly not related to a qualifying World Trade Center condition. *Id*. ¶ 37. NYCERS sent the plaintiff a letter dated July 1, 2013, stating that the Medical Board had denied her application. *Id*. ¶ 38. According to the plaintiff, this letter did not indicate that the Special Trial Committee or the NYCERS Board of Trustees had ever considered her husband's case – it mentioned only that "[b]ased on the Medical Board['s] determination[,] there will be no further review of this case." *Id*.

*Dukes*, 361 F. Supp. 3d at 365. Judge Koeltl granted Defendants' motion to dismiss in part and denied it in part. *Id*. at 376. Judge Koeltl dismissed Plaintiff's procedural due process claim without prejudice and her substantive due process claim with prejudice. *Id*. However, he denied the motion to dismiss the claims arising under New York state law, *i.e.*, the Article 78 Claim and the common law breach of contract claim. *See id*.

In April 2019, Plaintiff served subpoenas upon the Subpoenaed Doctors seeking deposition testimony from them, as well as the production of documents. (*See* Notice of Subpoenas, ECF No. 67-1.) The subpoenas sought documents regarding Plaintiff's application for benefits granted to members of NYCERS or their spouses or heirs in connection with the terrorist attacks on September 11, 2001, or the cleanup or remediation following the attacks ("WTC Benefits"); documents regarding Plaintiff and her deceased spouse; and policies and procedures related to applications for WTC Benefits in force between January 1, 2011 and the present. (*See id*.) According to NYCERS, the Subpoenaed Doctors were retained as independent contractors to the NYCERS Medical Board. (Letter Motion at 1.)

On April 11, 2019, Defendants produced a 661-page Administrative Record regarding Plaintiff's application for benefits, with one page of handwritten notes by Bottner redacted.

(Letter Motion at 1.) On May 9, 2019, Plaintiff requested an unredacted copy of Bottner's notes. (*Id*.)[5] Those notes were not provided to Plaintiff and are the subject of Movants' motion for a protective order.

On May 9, 2019, Plaintiff's counsel also asked Defendants' counsel to confirm whether he was representing Bottner and Reich so that their depositions could be scheduled. (5/9/19 Pl. Ltr., ECF No. 70-2.) On May 16, 2019, Defendants' counsel responded stating that Bottner, Sierros and Reich authorized him to represent them "for the purpose of responding to the subpoenas issued by plaintiff's counsel." (5/16/19 Def. Ltr., ECF No. 70-3.) In that letter, Defendants' counsel stated that Sierros' deposition was scheduled for May 28 and he provided available dates in June 2019 for the depositions of Bottner and Reich. (*See id*.) In addition, he indicated that the Defendants, Sierros, Bottner and Reich "object[ed] to the depositions, and reserve[d] the right to seek a protective order." (*See id*.) Finally, the May 16 letter stated that the Subpoenaed Doctors did not have documents responsive to the subpoenas in their possession. (*See id*.)

On May 29, 2019, the deposition of Sierros was taken. (Letter Motion at 2.) Counsel for both parties indicated at oral argument that the deposition lasted three hours, but one hour was taken up by Sierros reviewing the Administrative Record. (*See* 6/19/19 Tr., ECF No. 77, at 27.) In their Letter Motion, Movants state that, at the deposition, Sierros was "asked about the thought process and deliberations the [NYCERS] Medical Board engage[d] in, individually and collectively,

---

[5] Pursuant to an Order of the Court, on June 18, 2019, Defendants provided an unredacted copy of the entire Administrative Record, including Bottner's notes, to the Court for its *in camera* review.

in deciding plaintiff's . . . application [for WTC Benefits] . . . ." (Letter Motion at 2.)[6] The Court's review of the Sierros deposition transcript reflects, among other things, the following:

●    Sierros was asked to describe general processes undertaken by the three-person Medical Board and was asked specifically about the review of Decedent's file by the Medical Board.

●    Sierros was asked questions related to the Medical Board's conclusions as to Decedent's cause of death and related to a comparative review of Decedent's medical records with the Medical Board's conclusions.

●    During the deposition, counsel for Movants noted for the record that he had sent a letter to Plaintiff's counsel asserting the deliberative process privilege, but never instructed Sierros not to answer any questions posed to him.

On June 6, 2019, eight days after the Sierros deposition was taken, NYCERS and the Subpoenaed Doctors filed their Letter Motion seeking to quash the subpoenas and a protective order regarding notes taken by Bottner. (Letter Motion at 1, 3.) Movants argued that the deliberative process privilege "protect[ed] the doctors from being deposed," and that Bottner's notes were protected by the same privilege. (*Id*. at 2-3.)

In her response filed on June 14, 2019, Plaintiff argued that the New York Court of Appeals has not recognized a deliberative process privilege in civil litigation and that, even if such a privilege exists under New York law, it does not apply here. (Letter Response, ECF No. 70, at 1-3.)

---

[6] Excerpts from the Sierros deposition transcript were filed by Plaintiff. (*See* Sierros Tr., ECF No. 70-1.) Pursuant to an Order of the Court, Plaintiff on June 18, 2019 provided a complete copy of Sierros' deposition transcript to the Court for the Court's *in camera* review. The Court entered an Order on June 19, 2019 for Defendants to show cause within ten days why the complete transcript should not be publicly filed.

In their reply filed on June 18, 2019, Movants argued that the special procedures applicable to Article 78 proceedings circumscribe the discovery that should be permitted in this case, and continued to argue in favor of the deliberative process privilege. (Letter Reply, ECF No. 74, at 1-3.)

Oral argument was held on June 19, 2019.

## DISCUSSION

I.   **Movants' Motion To Quash The Subpoenas**

   A.   **Legal Standards**

Movants' Letter Motion is brought under Rule 26(c)(1) and Rule 45(d)(3)[7] of the Federal Rules of Civil Procedure. Rule 26(c)(1) permits the court to forbid disclosure or discovery on a showing of good cause. Fed. R. Civ. P. 26(c)(1). Rule 45(d)(3) provides that the court should quash a subpoena, upon a party's "timely" motion, when it "requires disclosure of privileged" information. Fed. R. Civ. P. 45(d)(3). "[T]he burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant." *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13-CV-01654 (RA) (HBP), 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)). Motions to quash subpoenas are "entrusted to the sound discretion of the district court." *In re Fitch, Inc. v. UBS PaineWebber, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (internal quotation marks omitted).

---

[7] Although the Letter Motion refers to Rule 45(c)(3) (Letter Motion at 1), the Court assumes that this was a typographical error since it is Rule 45(d)(3) that addresses motions to quash.

**B.   The Motion To Quash The Subpoena Served On Sierros Is Denied As Moot**

The deposition of Sierros already has taken place. Although counsel for Movants asserted objections to many of the questions posed to Sierros, he permitted Sierros to answer all the questions. Thus, the motion to quash the subpoena served on Sierros is moot. *See Brown v. Sperber-Porter*, No. 16-CV-02801 (PHX) (SRB), 2017 WL 10409840, at *2 (D. Ariz. Nov. 6, 2017) ("Because Bank of America has already disclosed the requested documents, the Court denies the motion to quash the subpoena deuces tecum served on Bank of America . . . as moot."). Thus, the remainder of this Section addresses the subpoenas served upon Bottner and Reich.

**C.   There Is No Deliberative Process Privilege Applicable Here**

Movants argue that the testimony Plaintiff seeks is protected by the deliberative process privilege. (Letter Motion at 2-3.) Plaintiff argues that there is no deliberative process privilege recognized under New York law outside the context of an action under the New York Freedom of Information Law ("FOIL"). (Letter Response at 1-2.) The jurisdiction of the Court in this case is based upon diversity of citizenship. *Dukes*, 361 F. Supp. 3d at 369. Thus, New York state law governs privilege in this case. *See* Fed. R. Evid. 501 ("in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"); *see also* 3 R. Haig, *Bus. & Com. Litig. Fed. Cts*. § 23:43 (4th ed.) ("Pursuant to Rule 501 of the Federal Rules of Evidence, the application and scope of all privileges in federal question cases in federal court is governed by federal common law, whereas in diversity cases, state law applies." (footnotes omitted)).

There is no statute or rule that creates a deliberative process privilege under New York law. *See In re 91st St. Crane Collapse Litig*., 31 Misc. 3d 1207(A), 2010 WL 6428504, at *2 (Sup.

Ct. N.Y. County 2010). Thus, this Court must look to New York state decisional law regarding the deliberative process privilege. In that regard, since this is a diversity case, this Court sits as "only another court of the State." *See GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235, 241 (2d Cir. 2001). Here, this Court sits as a trial court within New York County, which falls within the First Judicial Department of the Appellate Division.

A New York state trial court is bound by the decisions of New York's highest court, the New York Court of Appeals. Further, a New York state trial court "is bound to apply the law as promulgated by the Appellate Division within its particular Judicial Department . . ., and where the issue has not been addressed within the Department, [the court] is bound by the doctrine of stare decisis to apply precedent established in another Department, either until a contrary rule is established by the Appellate Division in its own Department or by the Court of Appeals." *See D'Alessandro v. Carro*, 123 A.D.3d 1, 6 (1st Dep't 2014).

> Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law. In determining how the Court of Appeals would rule on this legal question, the decisions of New York State's Appellate Division are helpful indicators. . . . The holding of an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000) (citations & quotation marks omitted).

The New York Court of Appeals has not recognized a deliberative process privilege in civil litigation. *See In re 91st St. Crane Collapse Litig.*, 2010 WL 6428504, at *2 ("While the [New York] Court of Appeals has often used the phrase 'deliberative process' to describe the inter-agency/intra-agency exemptions of the [FOIL], the Court has never created nor recognized a

generalized 'deliberative process privilege.'"). The parties have not referred the Court to any controlling decision by the Appellate Division, First Department, regarding the deliberative process privilege, nor has this Court found any such decision. However, *Mosey v. County of Erie*, 148 A.D.3d 1572 (4th Dep't 2017), is on point. There, the Fourth Department held that the FOIL deliberative process privilege does not apply in civil actions. *See id.* at 1574-76 ("The question is whether that statutory exemption contained in the [FOIL] also applies to discovery in civil actions. We conclude that it does not.").[8] Based upon this Appellate Division precedent, this Court finds that a deliberative process privilege is not available to Movants here, under New York law.

In their Letter Motion, the Movants principally rely on an Opinion by the Court in *In re World Trade Ctr. Disaster Site Litig.*, No. 05-CV-09141 (AKH), 2009 WL 4722250 (S.D.N.Y. Dec. 9, 2009), which arose prior to the *Mosey* decision cited above, and in a completely different procedural context. In *In re World Trade Ctr. Disaster Site Litig.*, the plaintiffs prevailed on the claims for benefits that they made to the FDNY and NYPD Pension Funds. Specifically, the plaintiffs "received disability pensions after the Medical Boards recommended their eligibility." *In re World Trade Ctr. Disaster Site Litig.*, 2009 WL 4722250, at *1. The plaintiffs in that case were seeking to subpoena testimony and documents from the Medical Board doctors who considered plaintiffs' applications for affirmative use in their lawsuit against the City of New York (and others)

---

[8] Movants called to the Court's attention a 2008 decision by the Appellate Division, Second Department, that appears to acknowledge the existence of a deliberative process privilege, *N.Y. Tel. Co. v. Nassau County*, 54 A.D.3d 368 (2d Dep't 2008). (6/19/19 Tr. at 19-20; Letter Motion at 3.) The Fourth Department in *Mosey* took note of that decision, but declined to follow it because the New York Court of Appeals "has never created nor recognized a generalized 'deliberative process privilege.'" 148 A.D.3d at 1575. Where state law is unsettled, this Court must seek to predict how the New York Court of Appeals would rule if confronted with the issue. *See Sprint PCS L.P. v. Connecticut Siting Council*, 222 F.3d 113, 115 (2d Cir. 2000). I predict that the New York Court of Appeals would follow the Fourth Department's more recent decision in *Mosey*.

for injuries they suffered as a result of their participation in operations performed at the World Trade Center site in the aftermath of September 11, 2001. In that context, the Court granted the City's motion to quash the subpoenas. *Id*. at *5. One basis for the Court's Opinion was the deliberative process privilege.[9] *Id*. at **2-5. Significantly, however, the Court found that the information plaintiffs sought had "little, if any, evidentiary value" since the "issues that ha[d] to be decided . . . involve[d] different issues and different considerations, with different legal presumptions." *Id*. at *5.

The Opinion in *In re World Trade Ctr. Disaster Site Litig*. is readily distinguishable from the present case. Here, the determination made by NYCERS, which was based upon decisions made by the Medical Board on which the Subpoenaed Doctors sat, is at the crux of this case. In the Amended Complaint, Plaintiff challenges decisions and actions of the NYCERS Medical Board. (*See*, *e.g.*, Am. Compl. ¶¶ 3, 37, 42, 56, 72(b).) The Medical Board Reports at issue here each list the Subpoenaed Doctors as the three members of the Board. (*See* 5/18/12 Report, ECF No. 43-9; 1/22/13 Report, ECF No. 43-10.) Plaintiff takes issue with the process by which her appeal of the Medical Board's May 2012 recommendation was decided. She indicated that she wished to appeal the recommendation of denial of her application before the Special Trial Committee. (*See* ECF No. 43-9 at 1 of 8.) However, Plaintiff alleges that the Special Trial Committee never considered her application. (*See* Am. Compl. ¶ 3.) Rather, the Medical Board's May 2012

---

[9] The *In re World Trade Ctr. Disaster Site Litig.* decision does not contain a choice of law analysis, but the jurisdiction of the Court in that case was based upon a federal statute, Section 408(b)(1) of the Air Transportation Safety & System Stabilization Act of 2001, 49 U.S.C. § 40101 (Amended Master Complaint Against the City of New York, 21-MC-00100 (AKH), ECF No. 507, ¶ 12), not diversity of citizenship. The federal common law, which applies to claims arising under federal law, does recognize a deliberative process privilege. *See Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000).

recommendation was revisited by the same Medical Board in January 2013. (*See* 1/22/13 Report at 1.) The two reports prepared by the Medical Board are inconsistent. One finds that Decedent's cause of death was "multiple complications secondary to diabetes." (*See* 3/27/12 Report at 6.) The other finds that the cause of death was "sepsis ultimately resulting in respiratory failure." (1/22/13 Report at 3.) In these circumstances, the testimony Plaintiff seeks from the Subpoenaed Doctors is relevant to Plaintiff's Article 78 Claim, which challenges the decision that was made based upon the NYCERS Medical Board recommendation, and the process by which it was made, as being arbitrary and capricious and not supported by substantial evidence. (*See* Am. Compl. ¶¶ 55-56.)

Thus, the Court finds that there is no deliberative process privilege available to the Movants here.

### D. Even If A Deliberative Process Privilege Were Available To Movants, It Would Not Be Applicable

Even assuming, *arguendo*, the deliberative process privilege were applicable to claims arising under New York law, it would not be appropriately applied in this case. "The deliberative process privilege is not absolute. In determining whether to preclude discovery of information that qualifies for the privilege, the court must balance the public interest in nondisclosure against the need of the particular litigant for access to the information." *In re World Trade Ctr. Disaster Site Litig*., 2009 WL 4722250, at *5. Here, as discussed above and in Section I.E. below, the decision-making process is the subject of this case, and any deliberative process privilege must give way.[10] *See Greater New York Taxi Ass'n v. City of New York*, No. 13-CV-3089 (VSB) (JCF), 2017

---

[10] The Court agrees with Plaintiff that each of the other factors courts consider in deciding whether information should be produced notwithstanding the existence of the qualified federal deliberative

WL 4012051, at *10 (S.D.N.Y. Sept. 11, 2017) ("[W]hen the decision-making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery."). The Court in its discretion finds that the testimony sought is relevant, and no good cause has been shown why the subpoenas should not be complied with.

**E.    The Typical Procedures Applicable to Article 78 Proceedings Do Not Impel Quashing The Subpoenas**

In their Reply, Movants focus on the "special procedures applicable to proceedings under CPLR Article 78" and note that "Article 78 proceedings are decided solely on the administrative record." (Letter Reply at 1.) Thus, they argue that the subpoenas seeking deposition testimony should be quashed. (*See id*. at 1-2.) The Court acknowledges that, in a typical Article 78 case in New York state court, which is a special proceeding (CPLR § 7804(a)), the petitioner generally is not permitted to take discovery outside the "record of the proceedings under consideration," which is filed with the Court pursuant to CPLR § 7804(e).[11] However, this is not a typical Article 78 case.

First, the process by which NYCERS reached its decision in this case is far from clear. There is a handwritten note in the Administrative Record from an unidentified individual to Bottner, appearing to be dated March 2, 2012, which states as follows:

---

process privilege weigh in favor of disclosure: Plaintiff has no other means of obtaining information as to how NYCERS' determination was reached; the issues involved here are quite serious; the government is a party to this action (which weighs in favor of disclosure); and Plaintiff is willing to enter into a protective order to address any future timidity by doctors retained by NYCERS' Medical Board. (*See* Letter Response at 3 (citing *Burbar v. Incorporated Vill. of Garden City*, 303 F.R.D. 9, 13 (E.D.N.Y. 2014).)

[11] As Movants note in their Reply (Letter Reply at 1), discovery is permitted in New York state court special proceedings only with leave of Court (except for notices to admit, which are permitted as of right). *See* CPLR § 408.

> Pls. see attached Accidental Death case. You recommended denial of claim on 2/23/12. Beneficiary submitted additional info. on a CD. Please review & if decision is same, pls. add to MBR.

(Administrative Record at D0000627.) The Administrative Record, however, does not appear to contain a recommendation made in February 2012.[12] Then, after the Medical Board issued its March 27, 2012 written report, NYCERS advised Plaintiff that she had the right to appeal to the Special Trial Committee, which she did. (*See* ECF No. 43-9, at 1 of 8.) Movants' counsel stated at oral argument that this invitation to appeal to the Special Trial Committee was a "mistake." (6/19/19 Tr. at 12-13.)

Later, on December 21, 2012, there is another handwritten note in the Administrative Record, apparently from the same unidentified individual, which states: "Pls. see attached new information submitted for Accidental Death case that was denied." (Administrative Record at D0000628.) Thereafter, on January 22, 2013, the Medical Board issued its second report in which it "reaffirms its previous recommendation to deny the application for Accidental Death Benefit," albeit reaching different findings and conclusions than its earlier report. (1/22/13 Report at 3.) There is no mention in the Administrative Record of any appeal or of any action by the NYCERS Board of Trustees. In these circumstances, Plaintiff should have the opportunity to take the depositions of Bottner and Reich to determine what happened at NYCERS, and to probe what "mistake[s]," if any, were made.

Second, as noted above, one of the three members of the Medical Board (Sierros) already had his deposition taken. Movants could have sought to quash all three subpoenas prior to the

---

[12] The date of this note, March 2, 2012, suggests that the author is not mistakenly referring to the Board's subsequent March 27, 2012 report.

time of the Sierros deposition, but did not. The Court will not permit NYCERS to choose to have only one of the three doctors who sat on the Medical Board testify at deposition, particularly in circumstances where one of the doctors who has not yet been deposed, Bottner, appears from the Administrative Record to have had a central role in the process by which Plaintiff's claim was handled.

Third, this case is pending in federal court, not New York state court. In diversity cases in federal court, the Federal Rules of Civil Procedure govern discovery, not the CPLR. "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 118 (2d Cir. 2005) ("New York state procedural rules do not apply . . . to a federal court sitting in diversity"). As Movants note in their Reply, the Federal Rules of Civil Procedure contain a "broad prescription of discovery." (Letter Reply at 1.)

For all the foregoing reasons, the Court in its discretion denies Movants' motion to quash. In the unique circumstances of this case, particularly given the broad scope of discovery in the federal courts, the Court finds that the depositions of Bottner and Reich shall proceed, with the limitations set forth below.[13]

---

[13] As an additional ground for denial of the motion to quash, the Court notes that the motion was not "timely made," as required by Fed. R. Civ. P. 45(d)(3)(A). Defendants' counsel waited until May 16, 2019 when he sent a letter to "object" to the depositions of Bottner, Sierros and Reich and to "reserve the right to seek a protective order" on deliberative process privilege and other grounds (5/16/19 Def. Ltr. at 1), but then did not file the motion to quash until June 6, 2019, after the Sierros deposition already had been taken.

**F.   Limitations On Depositions of Bottner And Reich**

Rule 26 of the Federal Rules of Civil Procedure defines the scope of permissible discovery as follows: "Unless otherwise limited by court order . . .: [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig*., 517 F.3d 76, 103 (2d Cir. 2008)).

Here, while the Court finds that the depositions of Bottner and Reich should proceed, in view of the constraints typically imposed on discovery in Article 78 cases in New York state court, the depositions should be limited in time. Thus, taking proportionality considerations into account, the depositions of Bottner and Reich each shall be limited to two and one-half hours; provided, however, that each witness shall have reviewed the entire Administrative Record not more than 48 hours prior to his deposition. If either witness fails to do so, then his deposition shall be extended for an additional hour.

**II.   Movants' Motion For A Protective Order Regarding Bottner's Notes**

**A.   Legal Standards**

Under Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . .. The court

15

may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

The burden of showing good cause for the issuance of a protective order falls on the party seeking the order. *See Brown v. Astoria Fed. Sav. & Loan Ass'n*, 444 Fed. Appx. 504, 505 (2d Cir. 2011). "To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Republic of Turkey v. Christie's, Inc.*, 312 F. Supp. 3d 385, 388 (S.D.N.Y. 2018) (citing *Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354, 356 (D. Conn. 2006)).

**B.    The Motion For A Protective Order Is Denied**

The sole ground on which Movants seek a protective order for the single page of Bottner's handwritten notes that are contained in the Administrative Record is the deliberative process privilege. As set forth above, the Court finds that such a privilege is not applicable in this case. In any event, even if it were applicable, it would not provide a basis for Movants to refuse to produce to Plaintiff that page of notes.

Based upon the Court's *in camera* review, the handwritten notes, which largely are illegible, appear to have been taken by Bottner as he reviewed Decedent's medical records. They contain dates and medical information relating to the Decedent. The notes are part of the Administrative Record of the Medical Board.

In their Letter Motion, Movants make the conclusory assertion that Bottner's notes disclose "opinions and thought processes." (Letter Motion at 3.) However, during oral argument,

Movants' counsel failed to adequately explain why the notes should be shielded from production. (*See* 6/19/19 Tr. at 21.) Although Bottner had told him that the notes were "written in preparation of the report," Movants' counsel could not say if the notes reflected any deliberations or discussions with Bottner's Medical Board colleagues or their thought processes, or simply reflected information Bottner had observed in the medical records. (*See* 6/19/19 Tr. at 21-22.)

Movants have not met their burden to obtain a protective order. Thus, Defendants shall produce to Plaintiff forthwith the unredacted page of Bottner's notes (*see* Administrative Record at D0000626).

## CONCLUSION

For the foregoing reasons, the Letter Motion (ECF No. 67) is DENIED in its entirety. The depositions of Bottner and Reich each shall proceed and shall be limited to two and one-half hours; provided, however, that each witness shall have reviewed the entire Administrative Record not more than 48 hours prior to his deposition. If either witness fails to do so, then his deposition shall be extended for an additional hour. In addition, Defendants shall produce to Plaintiff forthwith the unredacted page of Bottner's notes.

**SO ORDERED.**

DATED:      New York, New York
                 June 24, 2019

_____
STEWART D. AARON
United States Magistrate Judge